310 S.E.2d 852

**Charles L. PRAGER**

v.

**Ted G. MECKLING, Jr., d/b/a Ohio Valley Roofing.**

**No. 15883.**

Supreme Court of Appeals of West Virginia.

Dec. 14, 1983.

Ray A. Byrd and Barbara L. Baxter, Schrader, Stamp, Byrd, Byrum, Johnson & Companion, Wheeling, for appellant.

James A. Byrum, Bailey, Byrum & Vieweg, Wheeling, for appellee.

MILLER, Justice:

This is an appeal by the plaintiff, Charles L. Prager, from an order of the Circuit Court of Ohio County denying his motion for a new trial in a contract action. The jury found in favor of the defendant, Ted G. Meckling, Jr., doing business as Ohio Valley Roofing. The plaintiff claims that the trial court erred in allowing the defendant to introduce a document into evidence during trial when the existence of that document had not been revealed during pretrial discovery. Additionally, he argues that the court erred in refusing to permit the jury to consider his claim for punitive damages. Finally, he contends that the court erred in refusing to direct a verdict for him on liability and in refusing to grant him judgment notwithstanding the jury's verdict. After examining the record before us, we conclude that the trial court committed no reversible error.

In 1977 the plaintiff entered into a contract with the defendant for the repair of the roof of a building which housed a residential swimming pool. Under the contract the defendant guaranteed the work for a period of seven years. The defendant commenced working on the roof on August 10, 1977, and completed the work on August 13 or 14, 1977.

A few months after the work was completed, the roof began to leak, and this problem continued to occur on several occasions. Each time the defendant after notification went to the property and made repairs to the roof.

In the summer of 1980, the defendant was notified that the roof was leaking excessively. After examining the roof the defendant reported that the problem was caused by vandalism and that he was not responsible. The plaintiff called upon the defendant to honor his guarantee, but the defendant refused.

When the defendant refused to repair the roof, the plaintiff filed an action for both compensatory and punitive damages. The plaintiff sought to recover for the cost of a new roof, and for damages to the interior of the building, as a result of the roof leakage. In addition, the plaintiff sought punitive damages on the theory that the defendant willfully refused to honor his roof warranty.

In his answer, the defendant alleged that the damage to the roof was due to vandalism and the failure of the appellant to remove rotting leaves and other debris from the roof. He asserted that it was these conditions that relieved him of responsibility for making further roof repairs. He also alleged that he was not guilty of intentional or willful misconduct.

## I. PRODUCTION ISSUE

Prior to trial the plaintiff made a request for production of documents under Rule 34 of the Rules of Civil Procedure (R.C.P.). The defendant was asked to produce eleven specific categories of documents. The twelfth category was a general one for "[all] other documents in the defendant's possession ... relative to this litigation and not covered by the foregoing requests."

In answer to this request, the defendant responded that such "documents requested do not exist."

At trial, the defendant took the position that the interior of the building was substantially damaged when he first examined it in connection with the proposed roof work. To corroborate his point, he testified that on August 10, 1977, at the time he replaced the roof, he had submitted an estimate to the plaintiff for repairs to the interior of the building. The defendant also offered into evidence a written copy of the estimate. The plaintiff objected since the existence of the document had not been revealed on discovery.

■ Although both parties cite cases construing Rule 37, R.C.P., we find that those cases fail to resolve the questions presented on appeal. Ordinarily, Rule 37 is designed to permit the use of sanctions against a party who refuses to comply with the discovery rules, i.e., Rules 26 through 36. *See* 8 C. Wright & A. Miller, Federal Practice & Procedure § 2281 (1970). Generally, under Rule 37, in order to trigger the imposition of sanctions where a party refuses to comply with a discovery request, the other party must file a motion to have the court order discovery. *See* Rule 37(a).[1] If the discovery order is issued and not obeyed, then the party may seek sanctions under Rule 37(b).

■ The exceptions to the requirement for an order compelling discovery before sanctions can be obtained are contained in Rule 37(d).[2] This provision enables a party

---

1. Our Rule 37 is the same as Rule 37 of the Federal Rules of Civil Procedure. Rule 37(a), in pertinent part, provides: "A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows." The remaining portion of this rule details the appropriate procedure.

2. Rule 37(d) states:
   "*Failure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection.*—If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take his deposition, after being served with a proper

notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or

to seek sanctions directly from the court where the opposing party has failed: (1) to attend his own deposition; (2) to answer or object to interrogatories; or (3) to serve written response to a request for inspection under Rule 34.

We discussed this matter briefly in *State ex rel. McGraw v. West Virginia Judicial Review Board*, 165 W.Va. 704, 271 S.E.2d 344 (1980), where sanctions were sought because a witness had failed to answer certain questions at the taking of a deposition. We held that sanctions could not be imposed because there had been no motion under Rule 37(a) and no subsequent order directing the answers which if disobeyed would have formed the basis for sanctions under Rule 37(b). We did not discuss the Rule 37(d) exceptions because they were not applicable to the facts.[3]

■ In the present case, the claimed discovery violation involved an incorrect response to one of a series of requests for production of documents under Rule 34. Initially, a written response was filed by the defendant to the plaintiff's request for admissions. Consequently, the direct sanctions under Rule 37(d) were not available as the imposition of sanctions under this provision is triggered when there is no response to a request for production of documents. Ordinarily, where an inadequate response has been made, to trigger sanctions under Rule 37(b), an order compelling discovery would have to be ob-

tained. If the recalcitrant party does not obey the order then a request for sanctions can be made. 4A J. Moore, J. Lucas & D. Epstein, Moore's Federal Practice ¶ 37.05 (1983).

■ The reason that this case does not fit into a Rule 37 context is that the plaintiff had no way of knowing that the defendant's initial answer was untrue when the defendant responded that no documents existed. As a result, the plaintiff had no reason to seek sanctions under Rule 37. If at the time the defendant made the answer he had not found the document, then his answer was true. However, Rule 26(e)(2), R.C.P., imposes a continuing obligation to supplement responses previously made when, in light of subsequent information, the original response is incorrect.[4] Under this rule, the defendant did have an obligation once the document was located to make its existence known to the plaintiff.

■ Despite the lack of any express provision in Rule 26(e) authorizing the imposition of sanctions for failure to supplement previous discovery responses that are incorrect in light of current information, most courts have held that a trial court has inherent power to impose sanctions as a part of its obligation to conduct a fair and orderly trial. *Washington Hospital Center v. Cheeks*, 394 F.2d 964 (D.C.Cir.1968); *Clark v. Pennsylvania Railroad Co.*, 328 F.2d 591 (2nd Cir.1964), *cert. denied*, 377

that other circumstances make an award of expenses unjust.

"The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c)."

3. This point is discussed in 4A J. Moore, J. Lucas & D. Epstein, Moore's Federal Practice ¶ 37.03[2.–1] at 55–56 (1983), as follows:

"Rule 37(b) relates solely to situations in which the court has made an order to provide or permit discovery and a party or its officer, director or managing agent has failed to obey it. . . . Rule 37(d) deal[s] with sanctions for failure to appear for the taking of a deposition [Rules 30, 31] and failure to answer interrogatories [Rule 33] or requests under Rule 34. . . . Except to the extent that Rule 37(d) is applicable, therefore, failure to disclose through

these devices cannot be punished by imposition of sanctions under Rule 37(b) until the court has ordered compliance after motion and notice as provided in Rule 37(a) or if such an order has been made in conjunction with a proceeding for a protective order under Rule 26(c) or a proceeding under Rule 37(d)." (Footnotes omitted)

4. Our Rule 26 is the same as Rule 26 of the Federal Rules of Civil Procedure. Rule 26(e)(2) provides:

"A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment."

U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054; *Campbell Industries v. M/V. Gemini*, 619 F.2d 24 (9th Cir.1980); *Price v. Lake Sales Supply R.M., Inc.*, 510 F.2d 388 (10th Cir. 1974); *Olson v. A.W. Chesterton Co.*, 256 N.W.2d 530 (N.D.1977); *Laney v. Hefley*, 262 S.C. 54, 202 S.E.2d 12 (1974); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2050 (1970).[5]

■ Courts have generally settled on several criteria for determining whether the failure to supplement discovery requests under Rule 26(e)(2) should require exclusion of evidence related to the supplementary material. The most common problem is where a party is required to give notice of his witnesses and fails to supplement the list and then seeks to call an unlisted witness. In *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201–02 (3d Cir.1978), where the issue was barring a doctor's testimony, these factors were listed:

> " '1. the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified;
>
> '2. the ability of that party to cure the prejudice;
>
> '3. the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court;
>
> '4. bad faith or willfulness in failing to comply with the court's order.' ...
>
> "Additionally, we noted the significance of the practical importance of the evidence excluded."

*See also Franklin Music v. American Broadcasting Companies, Inc.*, 616 F.2d 528 (3d Cir.1979); *Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894 (3d Cir.1977); *Murphy v. Magnolia Electric Power Association*, 639 F.2d 232 (5th Cir.1981); *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable and Cold Storage Co.*, 709 F.2d 427 (6th Cir.1983); *Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342 (8th Cir.1979); *Smith v. Ford Motor Co.*, 626 F.2d 784 (10th Cir. 1980), *cert. denied*, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981).

We briefly spoke to this issue in *W.L. Thaxton Construction Co. v. O.K. Construction Co.*, 170 W.Va. 657, 295 S.E.2d 822 (1982), where the defendant failed to include certain information in its interrogatory answers. The trial court refused to permit the introduction of this information at trial. We held that the trial court had abused its discretion and concluded, without elaboration, that there had been no surprise to the opposite party.

■ Utilizing the foregoing factors, we do not believe that the trial court in the case before us abused its discretion in admitting the exhibit. The elements of surprise and prejudice to the plaintiff were rather minimal since the defendant in his pretrial deposition had testified that there was substantial water damage to the interior of the pool building when he inspected it at the time he put on the new roof. He testified regarding the damage and indicated that in his view much of the damage occurred as a result of flooding from Wheeling Creek.

This was essentially the same testimony offered at the trial which was corroborated by Melvin Vanerman, who had worked with the defendant on repairing the roof. Thus, the facts were known before trial and were corroborated at trial by another witness. The document thus only provided additional corroboration. Moreover, the document applied only to one element of the plaintiff's damage claim.

There is no factual development to show willfulness or bad faith on the part of the defendant. Although the record indicates the defense attorney had been given the

---

5. 8 C. Wright & A. Miller, *supra* at 325–26, makes this statement:

"In the absence of a rule speaking to the question, reliance must be on the inherent power of the court. There has been a reluctance to use inherent power as the basis for sanctions, and it would have been desirable to tie Rule 37 directly to the situation here being discussed, but since this was not done the courts must be held to have inherent power to protect the integrity of their processes by imposing sanctions for giving an incorrect response and for failing to supplement a response." (Footnotes omitted)

document a week or so prior to trial, we are left with the impression that the trial court ascribed his failure to turn over the document to inadvertence rather than willfulness or bad faith. We, therefore, find no reversible error on this point.

## II. DIRECTED VERDICT ISSUE

Plaintiff claims that the court should have directed a verdict on liability, however, we do not believe that the court erred in this regard. Our traditional standards governing motions for a directed verdict are set out in Syllabus Point 5 of *Young v. Ross*, 157 W.Va. 548, 202 S.E.2d 622 (1974):

"Where a motion for a directed verdict is made by a party at the trial of a case, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed and the court must assume as true those facts which the jury may properly find from the evidence."

*See also Ashland Oil, Inc. v. Donahue*, 164 W.Va. 409, 264 S.E.2d 466 (1980); *Casto v. Martin*, 159 W.Va. 761, 230 S.E.2d 722 (1976).

Moreover, as we also said in *Young v. Ross, supra*, in Syllabus Point 4, in part:

"It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting."

*See also Morgan v. Bottome*, 170 W.Va. 23, 289 S.E.2d 469 (1982); *Rhodes v. National Homes Corp.*, 163 W.Va. 669, 263 S.E.2d 84 (1979).

 In the present case, the defendant denied that he had installed the roof improperly. He, along with his witness, claimed that the roof leaks were attributable to vandalism from third parties and that the interior damage to the building was due to recurrent flooding. Under these facts, we do not believe that the trial court abused its discretion under the foregoing law by permitting the jury to decide the issues, nor did the court err in refusing to set the verdict aside.

## III. PUNITIVE DAMAGE ISSUE

The plaintiff contends that the court erred in refusing to instruct the jury that he was entitled to punitive damages. However, we have traditionally held that where the plaintiff does not prevail as to liability any errors he claims as to damage instructions are harmless because, without a verdict on the liability issue, he is not entitled to any damages. This principle is set out in Syllabus Point 3 of *Martino v. Rotondi*, 91 W.Va. 482, 113 S.E. 760 (1922):

"An instruction incorrectly stating the measure of damages to be applied in case recovery is had, cannot successfully be made the basis of an assignment of error, where the plaintiff is not entitled to any recovery at all. The error in giving such instruction in such case is harmless."

*See also Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584, 590 (1981); *cf. Legg v. Jones*, 126 W.Va. 757, 30 S.E.2d 76 (1944).

For the reasons stated, the judgment of the Circuit Court of Ohio County is affirmed.

Affirmed.