SARA F. EBBERT *v*. JULIAN F. BOUCHELLE, *Judge, etc., et al.*

(No. 9183)

Submitted April 8, 1941. Decided April 29, 1941.

*Steptoe & Johnson* and *W. F. Wunschel,* for relator.
*Rummel, Blagg & Stone,* for respondents.

KENNA, PRESIDENT:

The Court of Common Pleas of Allegheny County, Pennsylvania, appointed a commissioner residing in Charleston who was empowered to take testimony in a proceeding pending in that court in which Sara F. Ebbert was complainant, and Plymouth Oil Company and others were defendants. The plaintiff in the Pennsylvania cause filed her petition, later amended, before the Judge of the Circuit Court of Kanawha County, praying for a *subpoena duces tecum* returnable before the commissioner at a named place and time, requiring Ruth M. Rummel, executrix of the estate of Henry D. Rummel, deceased, to appear and produce the following documentary evidence, according to the prayer of the amended petition:

> "1. Ledger sheets or similar records of account of Henry D. Rummel for the years 1925 to 1929, both inclusive, showing charges and credits to the account of Plymouth Oil Company, defendant, for professional services and expenses in connec-

tion with litigation between W. M. Henderson, et al. and Plymouth Oil Company, et al., in the Court of Chancery of Delaware, and the Supreme Court of Delaware, and litigation between W. M. Henderson, et al. and Plymouth Oil Company and J. G. Farquhar, in the United States District Court for the Western District of Pennsylvania and the United States Circuit Court of Appeals for the Third Circuit.

"2. Ledger sheets or similar records of account of Henry D. Rummel for the years 1925 to 1929, both inclusive, showing charges and credits to the accounts of the individual defendants in the two matters of litigation described in paragraph 1 hereof.

"3. Cancelled checks of Henry D. Rummel supporting all payments charged out of said accounts referred to in paragraphs 1 and 2.

"4. Copies of Federal Income Tax Returns of Henry D. Rummel for the years 1925 to 1929, inclusive.

"5. Copies of statements rendered by Henry D. Rummel to Plymouth Oil Company and/or the other defendants in the matters of litigation described in paragraph 1 hereof for professional services and disbursements in such matters of litigation."

The prayer of the petition was declined by the circuit judge, and this proceeding is for the purpose of procuring a writ of mandamus requiring the Judge of the Circuit Court of Kanawha County to enter an order awarding the *subpoena duces tecum* as the performance of a required ministerial function.

The petition filed in the circuit court, together with accompanying exhibits, all of which are included in the petition filed here, comprise two hundred thirty-eight typewritten sheets due to the complexity of the proceedings pending before the Court of Common Pleas of Allegheny County, Pennsylvania, a superficial resume of which follows:

The plaintiff in that cause is a minority stockholder in

Plymouth Oil Company, and instituted that proceeding in her own behalf and in behalf of stockholders similarly situated who might become parties, in order to recover from certain other stockholders and directors the sum of $833,146.36, the disbursement of which had been shown in a balance sheet of the Plymouth Oil Company as an asset under the heading of "Deferred Charges" until in July, 1938, when the board of directors of that company had it deducted from the earned surplus of Plymouth Oil and charged off as an asset. The proceeding was for the purpose of having it re-converted into an asset due to the fact that the expenditures by Plymouth Oil constituting that aggregate had been made in two legal proceedings in which the company was a merely formal party and had no substantial interest, the substantial defendants being stockholders and directors whose personal liability was involved in both cases, one being a proceeding in Delaware, brought against the corporation and individual defendants to compel the surrender and cancellation of 700,000 shares of the company's common stock, alleged to have been illegally issued to the individual defendants named; and the other, a proceeding, brought in Pittsburgh, for the purpose of requiring the corporation to transfer to the plaintiff certain outstanding stock which he had acquired from one of the then stockholders, amounting to 50,000 shares. It seems that it was information regarding these expenditures that petitioner sought from Ruth M. Rummel, as the executrix of the estate of H. D. Rummel, deceased, who had appeared in both cases as counsel for Plymouth Oil Company, by virtue of the *subpoena duces tecum* described in the prayer of the amended petition.

As a general rule, there is a certain showing which must be made to the satisfaction of the clerk or of the court to justify the issuance of a *subpoena duces tecum*. There must be:

(a) A description of the writing, the production of which is sought, sufficient to identify it.

(b) A showing of the relevance and materiality of its contents to the matters in controversy in the pending case.

(c)    The fact that the proof is not otherwise practically available.

There are other elements with which we are not now concerned, which must be established as a perequisite to the issuance of the subpoena, the determination of which does not await a showing made by the witness upon the return. In *Moats* v. *Rymer,* 18 W. Va. 642, 644, 41 Am. Rep. 703, perhaps by way of dicta, this Court had this to say:

> "It may be remarked however, that where any written document material to either party is in possession of a third party, the court may award a *subpoena duces tecum* to compel such third person to attend at the trial of the cause and bring the document with him. This writ is of compulsory obligation and effect. In every instance it is a question for the consideration of the court, whether upon the principles of reason and equity the production of the paper should be required; and if it be withheld, whether the witness should be punished by attachment. *Amey* v. *Long,* 9 East 473; *Amey* v. *Long,* 1 Camp. 14."

We are not now concerned with the question of whether or not an opportunity to be heard must be accorded before a *subpoena duces tecum* issues, and do not wish to be understood as passing upon that question directly or indirectly. However, it is perfectly clear that the question of complying with its commands, if not resistance of its issuance, may properly be raised in a preliminary procedure before the judge of the court from which it issues. That question is not now before us, and we mention it only for the purpose of attempting to clarify the discussion which follows of the question of judicial discretion.

It requires, we think, but a scanning of the mentioned elements required to be established before the issuance of a *subpoena duces tecum* is justified, to show very plainly that the exercise of discretion necessarily is involved. Questions concerning the description of the writing to be produced, the pertinence of its contents, as well as the

availability of other means of proof, all being required as prerequisite to its issuance in order to prevent unreasonable searches and seizures and meddling curiosity concerning an individual's personal affairs are not to be determined by the exercise of a merely ministerial function. The overwhelming weight of authority, both in this country and in England, so holds, the usual phraseology terming an unjustifiable subpoena of that kind a "judicial fishing enterprise." *American Car & Foundry Co.* v. *Alexander Water Company,* 221 Pa. 529, 70 Atl. 867, 128 Am. St. Rep. 749, 15 Am. & Eng. Ann. Cas., 641, annotation at 643. See also, Jones on Evidence, Par. 2304, Vol. 5, page 4504.

Our statute dealing with *subpoena duces tecum* running against persons who are not parties in the proceeding in which it issues is Code, 57-5-4, which, under its terms, becomes operative only when it is made to appear that the documentary proof sought "is material and proper to be produced." This section extends the power of the court so that the judge, in vacation, may order the clerk to issue a *subpoena duces tecum.* It also authorizes its issuance returnable before commissioners appointed by authority of another state, as here.

The administratrix of H. D. Rummel, deceased, is not a party litigant. In the event she were, Code, 57-5-3, would control, and the ministerial issuance of a *subpoena duces tecum* against a party to the proceeding out of which it grew, under the language of the controlling statute, might be more open to doubt. On the other hand, we believe that the applicable section in this matter, without any question, leaves it to the sound discretion of the presiding judge to determine the materiality and propriety of ordering the production of documentary evidence by a person not a party.

It is unnecessary to refer to the books to maintain the proposition that in order to procure a writ of mandamus, the petitioner must show that he has a clear legal right. We are of the opinion that whatever right the petitioner has in this matter turns upon the sound discretion of the Circuit Judge of Kanawha County, exercised by him in

declining the prayer of the petitioner here. That brings us to consider to what extent, if at all, the discretion of a judge of a court of record is controllable by a peremptory proceeding. Naturally, it is reviewable, as distinguished from controllable, if thought to have been abused.

In exercising its discretion, the court is, of course, acting judicially, not ministerially. In *Fleshman* v. *McWhorter*, 54 W. Va. 161, 165, 146 S. E. 116, will be found a clear statement of the generally recognized difference between ministerial and judicial functions. The assumption where the court acts, is that it is exercising a judicial function. We are of the opinion that none of the reasons assigned by petitioner to overcome that supposition, and to treat the issuance of a *subpoena duces tecum,* under Code, 57-5-4, as a ministerial act, is tenable.

We do not believe that it is necessary to discuss in detail the papers generally referred to in the petition filed before the judge of the circuit court. The unusual difficulty of producing the papers included in the broad scope of the prayer we regard as obvious. The subpoena could, for that reason alone, have been justifiably refused. If we treat the process as having been declined due to its indefinite general description, we do not feel that we reach the question of constitutionality involved in the compulsory production of any of the documents specifically included, such as copies of income tax returns, correspondence, etc.

An order will be entered declining the peremptory writ.

*Writ refused.*